Robert Jobin, I'm appearing today on behalf of the petitioners. Could I ask you to please speak up, sir? Because I'm having trouble hearing you. May it please the Court? I'm Robert Jobin. I'm appearing today on behalf of the petitioners, Jaime Lopez-Roca and his mentally disabled son, Daniel Lopez-Sanchez. In preparing for argument today, I've come to believe pretty strongly that the Court can't decide the central issue in this case, and that is whether Mr. Lopez-Sanchez belongs to a particular social group without first remanding this case to the Board of Immigration Appeals for them to issue a reasoned decision on that issue in the first instance. That would not have any bearing on the Lopez-Roca case, though, would it? No, Your Honor. And with regard to the father, I've examined the issues with regard to his credibility, and I'm actually not prepared today at oral argument to defend the opposition. Let's concentrate on the other. I think you're absolutely right, Mr. Jobin, and I really appreciate your getting to the precise issue, which at least is bothering this judge on this panel. My problem with the remanding to the BIA on this issue, I'm conscious of the Ventura rule, and I know about Gonzalez v. Thomas, but it's really one of statutory interpretation, as I see it. Does the word social require there to be societal ties between the members of the group, either by blood, as it is in Gonzalez v. Thomas, or some other affective relationship? Here's my problem. If you make a social group out of people who have the immutable characteristic in common of mental deficiency or mental problems, you might as well say that people who have cancer are a particular social group, or people who have blonde hair are a particular social group. Those are immutable characteristics, blonde hair perhaps not as immutable as cancer. That's the problem I have, and that turns, as far as I'm concerned, with a question of statutory interpretation, and I don't see why the BIA is in any better position to read Congress's expressed intent than we are. I think, you know, I approach this with the Chevron framework in mind. With the? The Chevron framework. Yes. But Chevron framework starts with the proposition, Chevron framework is step two. Step one is if it's unambiguous, the court interprets it. It's only when it's ambiguous that the court doesn't interpret it and sends it back. I don't find anything ambiguous in the term social. Do you? Well, you're not, the problem with that, Your Honor, is you're not writing on a clean slate, and this court has repeatedly held that the term particular social group encompasses those that are bound together by an immutable characteristic, and those, a second part of the test would be those bound together by some sort of a voluntary association. So as a panel of the Ninth Circuit, we can't just strike out and start interpreting the statute by our own lights. That's your point. That's my first point. Talk on that, because as I read the cases, we have deferred in statutory interpretation of the term particular social group to the BIA. Right. Right. And because how do those cases affect us here? Are there any particular social groups which are made up solely of common immutable characteristics based on medical conditions? No. There's only one case out of any circuit that's addressed that, and that's the Eighth Circuit. And the social group that was proffered there was very different. To approval. Right. Yes. I mean, that was just generally mentally ill people. And here we're dealing with a more narrow proposition. The social group that we're proffering is those individuals who are severely and chronically mentally disabled, so sick that they really can't take care of themselves, not just generally suffering from psychological problems, but mentally disabled to the point where they can't care for themselves. Have you found a case that has accepted that, your definition? No, Your Honor. Just at the Board of Immigration Appeals. I mean, this isn't the first time that the Board of Immigration Appeals has addressed this question. Part of the reason I think remand is necessary is that if you look at the decision that we decision expressly adopted the very social group that, in this case, the immigration judge rejected. It's another case that we handled, and we proffered the exact same definition of a social group. That case is called Moscoso, and in an unpublished decision, the Board of Immigration Appeals agreed that that is a particular social group. So the Board itself, in its unpublished decisions, has embraced this on occasion. It's just that it's been inconsistent. Going back to your point, Your Honor, I'm not convinced, as you are, that the term is plain and unambiguous. To me, the meaning of the phrase particular social group, that's a classic example of something that the agency should decide in the first instance. Because in my view, at least, Well, you could have members of a group who don't know each other, who have no societal relationship with each other, who don't even live in the same country. Precisely. And you're saying that they form a particular social group. That, as a matter of definition and lexicon, just sounds the wrong note to me. Right. But you have to keep in mind that that phrase comes from the Refugee Convention and the Refugee Protocol, and there's a long negotiating history behind the meaning of that term. And the term was not, as it was expressed in the negotiating history, intended to be as narrow as you're describing. And the board has recognized that, I think, in its precedent. And I think also the circuit courts have recognized that in interpreting the term, we need to go back to the travaux préperatoire of the treaty to determine, you know, what the drafters of the Refugee Convention had in mind. And I don't think they had in mind anything as narrow as what you're proposing. I would like to hear from you what cases conduct us to determine that this matter should be remanded to the BIA. Well, I think the case that really controls it, I think, is Thomas. And secondly, I would direct you to the Second Circuit's decision in Uselo-Gomez, because that's, in my opinion, an identical situation. But Thomas, it's a unanimous summary reversal of this court's en banc decision. The Supreme Court held that this court had violated fundamental principles of administrative law by deciding de novo whether a particular family was a particular social group. But there, the particular family had ties by blood and by marriage to each other, which are recognized universally as social ties. Right. But the point here, what you're saying is that this young man who has mental problems is a member of a group, a particular social group, with perhaps somebody in China, somebody in Russia, somebody in India, somebody in Argentina, all who have the same condition. Now, the way I understand the term particular social group is it is country specific. You're looking at, do these individuals form a particular social group within those geographic boundaries? Because what's a particular social group in Peru may be different from what constitutes a particular social group. Well, what you're saying is that there's circumstantial evidence in this case that people with immutable characteristics are treated differently in Peru than they are treated from India. Exactly. Because an essential ingredient, at least as the Board has applied the term, is that that group has to be stigmatized in that country. You're saying that the treatment in that country would be not relevant. Yeah. Would not be up to our standards or what kind of standards. But in determining whether the mentally ill or the mentally disabled in a particular country constitute a particular social group, yes, the Board typically is going to examine whether that group suffers from stigmatization and is seen as a sort of a disfavored group, is perceived as such by the people of that country. And that's the problem with your hypothetical about cancer. They may form a group of people linked together by an immutable characteristic, but for purposes of the Refugee Convention and the Act, they're not going to be treated as a particular social group unless you can demonstrate that they suffer from that generalized stigmatization. The second step that we have to always find is that the disfavoring of the group is done by, A, the government or by groups which the government refuses to control. Now, here, the disfavored, the disfavoring of person or group is a man's own family, is his mother, right? Right. How do you tie that into the government or a group that the government refuses to control? The evidence on that point, Your Honor, I think is pretty clear. And if I could do this on my rebuttal, I'll give you citations to the record on that. Because the mother, even though complaints were made, she kept getting custody and the government never interfered, really, with her mistreatment of this child, even though it was horrific. But I can give you citations to the record as I review my notes and I come back. All right. We'll leave you some time for a rebuttal. First of all, let's cut to the chase. Do you agree that there should be a remand of the BIA? Thank you, Your Honor. May it please the Court. Catherine Hahn for the government. No, the government does not believe that a remand is order, in order, and I'm prepared to address why. First, I'd like to just the discussion so far has tended to focus on whether or not Petitioner here urges a cognizable social group. And I'd like to point out that this Court need not reach that complex question for the simple reason that the IJ's opinion itself focuses on why this Petitioner was not persecuted on account of, and I believe those are the important words here, on account of his membership in any social group. It's true that in the 30-page written opinion of this immigration judge, he does make, he does make some findings about social group. However. Well, doesn't, isn't the case, is the evidence in the case that the mother abused this child because he was retarded and because he was slow? There is, Judge Bea, there is some evidence in the record of that. However, the government would respectfully submit that is not the standard. The standard is whether substantial evidence supports the IJ's view and the government's position is that it does. I could detail for the Court, for example, there was testimony from the mother and from the aunt in this case. I'm sorry, not from the mother, but from the father about the mother's reasons. There was testimony from the aunt. If you look at our brief, the government's brief on page 18, you'll see that we talk about how the IJ and how testimony in the record. So you say that the IJ made a finding that if the child was abused, it was not on account of his mental condition. That then what was it on account of? For example, I'll give the court some examples of the record at page 147 talks about how the mother was quote unquote drunk and how she preferred to have a daughter rather than a son. You're saying it's just mistreatment by the mother and not persecution. That's correct, Your Honor. With respect to the mother, the IJ also gave a number of reasons. Where in the decision of the IJ does the IJ say that the persecution of the child was based on factors other than his mental condition? Just in the IJ's decision, other than in the record, because it's substantial evidence in the record. But I have is I have the decision here. And if you could help me a lot, if you just point out to me the factual finding of the IJ that whatever persecution the lad suffered was not because of his mental condition, but because the mother just preferred the daughter to the son and didn't want to have a son around or didn't like the way he parted his hair. Because, as I read it on page 121 of the record, page 21 of the opinion, he says, for the foregoing reason the Court finds that Daniel has not established that he belongs to a particular social group for purposes of the act. Because he has not demonstrated that he was persecuted on account of one of the statutorily protected grounds, Daniel is ineligible for asylum. There, that's the finding that you're talking about. But it seems to be mixed up in an analysis that he does not belong to a particular social group. Your Honor, it's correct that, in fact, a lot of the IJ's decision here does discuss why the on-account of membership as it pertains to the police and to the government. But there is also substantial evidence in the record. And if you turn to page 18 of the government's brief, we talk about that. We talk about the testimony that, quote, she never wanted to have a male son. She wanted a girl, end quote, and was bothered by Sanchez's special needs. In addition, the record reveals page and the IJ's decision reveals this, a number of pages where it's about the mother's out partying, spending money, drinking. With all due respect, this petitioner might well have been a victim of domestic violence, but that's not necessarily on account of his membership in any protected group. And the government's prepared to discuss it. Is there any other place in the IJ's decision where he makes, that he analyzes factors other than mental defectiveness as a grounds for mistreatment? Other than those that I've stated, no, Your Honor. He focuses primarily on why this petitioner doesn't make out the membership requirements. He's not a member of the, there is no particular social group, right? Exactly. That's kind of thin, isn't it? The question's not whether it's thin, the question is whether it's there. And I think in the thousands of pages of testimony, even the aunt talks about how the mother didn't believe the son was, quote, unquote, crazy, and that therefore she didn't believe he needed to attend a special school. And I can get the court that citation, if you'll bear with me for a moment. So even we have petitioner's own witness testifying there why that is. So your position is that there's substantial evidence which would allow the IJ to make a determination that this lad was the victim of ordinary sibling preference and domestic violence and not persecution because he belonged to a particular social group to wit the mentally defective. That's correct, Your Honor. And also the government would just remind the court that the standard is whether the record would compel a reasonable fact finder otherwise. And I don't think that a different view here is compelled, particularly in light of the testimony of the aunt that I just mentioned where she talks about how the mother didn't even believe the boy to be, quote, unquote, crazy. And I believe that's at the record at page 520. The government would be happy to submit some additional citations for that point after argument. But I would just note even if this court were to reach the social group point, and the government does not believe that it should because we believe that here the IJ was very clear that he was making a factual determination about this petitioner. And that's distinguishable from the cases that Mr. Jobe just cited. For example, in the Usela case and in the Thomas case, this court, a panel of this course was summarily reversed in the Thomas case and also in the Ventura case, but that's because there had been some factual findings. And so essentially, the petitioner here is asking this court to do just what the Supreme Court summarily reversed another panel of this court for doing in Ventura. And that is- I'm not following you. The finding here is that this child, all the doctors, I think, are unanimous in saying he has a severe mental condition. He's got bipolar. He's got a series of other mental defects. So why isn't he a member of a particular social group to wit the mentally defective in Peru? Would you like the government to address why that's not a cognizable social group? For one thing, I can talk about how that group is a moving target for petitioner himself. Before the IJ, there's testimony in the record at 216 where the class that they were urging was, quote, retarded individuals suffering from bipolar problems, end quote. Now before this court, it's the, quote unquote, chronically mentally disabled. And even then, they've urged several different characterizations. Well, they're now urging a class which is chronically mentally defective. Yes. All right, let's stay with that. Okay. Why isn't that a particular social group? Well, under the BIA's precedence and the precedence of this court, particularly the BIA precedence, such as AME and CA, there's no common immutable characteristic here for petitioner. He lacks- There's no common- Immutable characteristic. Sure there is. They're chronically mentally defective. That's a common immutable characteristic. Oh, you said he might get better. He might get better. He might, he responds to medication. That's something that's in the record. But more importantly than that, that's not the only benchmark. There are two other benchmarks. One is social visibility, and one is the non-discrete nature of the class. Is what ability, I'm sorry? Lacking social visibility. In fact, the police here didn't even realize the petitioner had mental disability and stopped mistreating him. You're arguing the facts. You're saying he's not really mentally disabled. I'm saying he lacks social visibility. And the class, he urges, would lack social visibility. Visibility as opposed to disability. What concerns me the most is it's, I've, I don't remember ever seeing a case where there's supposed to be persecution where a person's parent has not treated him correctly. And because he's got some kind of a physical problem or mental problem. Are there cases like that that say that that is persecution if a parent mistreats a child? Not that the government's aware of, Judge Siler. However, I would also note the third benchmark that is here, I would think the most important, which is the class petitioner urges, is not particularly well-defined or discreet. This Court's own case law under the Deval case at page 793 talks about where there's more differences than similarities. May I finish the question? And here, there are clearly more differences than similarities. As in the BIA's precedence in CA and AME, the class petitioner's urging could compromise potentially 1% of the population in Peru. It could compromise, be comprised of essentially 20% in Peru, depending on how broad you define the class. But in any event, we, the government, would urge that this Court not be the one to decide the complex legal question of whether this is a cognizable social group. Instead, reading the IJ's opinion, substantial evidence supports the IJ's finding that this petitioner did not suffer persecution on account of any disability. And I think that's very clear. If the Court would require more citations for that proposition, the government would be happy to submit them. Counsel, help me out. Where, again, is there any evidence that the mother abused the child, not because he was mentally defective, but because she liked a daughter better than him? Is that page 16 through 18 in your brief? Is that what you're citing? Page 18 in our brief contains a number of citations. Okay. Thank you very much. Yes. And also, I would refer the Court to the aunt's testimony, where the aunt discusses how she tried to, the mother tried to say that the son was not crazy and did not need to go to a special school. All right. The Court has no further questions for all the reasons in our briefs. And that I've stated, the government urges that this Court should not deny the petitioner's relief, and that a remand is certainly not in order. Thank you very much. Mr. Jobe, do you think that there is substantial evidence to sustain an IJ's proposal that the prosecution, if any, was not on account of a particular social group? No, Your Honor. The evidence is overwhelmingly to the contrary. And the government's attempt to characterize the issue here as a factual question, that's completely inconsistent with the way they characterize the issue in their brief. I mean, if you look at pages 39, 40, and thereafter of their brief, they frame the issue here as a purely legal one, and that is, you know, on page 39, they're saying that Sanchez's claimed classification of chronically mentally disabled people in Peru is overly broad, too indeterminate to constitute a particular social group under the INA, and they go on for page after page arguing that this is not a cognizable social group. So for them to come in now and say that this is really a factual question, it's not consistent with their brief. Mr. Jobe, it may be a little clever, and I don't know that you intend it to be. When you write a brief, you respond to the brief that was filed by the appellate. Isn't that what the respondents traditionally do? Traditionally, Your Honor, but their response was that's what they were doing. No. Their response would have been that we've misread the immigration judge's decision, and, in fact, this presents the case presents a factual question, and here's the answer to that factual question, but they didn't do that. They treated it, as we did, as a legal question. Now, in response to your question, I certainly would think that from reading the portion of the I.J.'s opinion, which I thought was a very good opinion, as I.J. opinions go, that he certainly determined that there was no persecution because there was no particular social group, because the social group was not closely defined, and it just didn't qualify under the law, certainly not because the child wasn't persecuted, I cannot He belongs to a social group. Of course. Yeah, that's my reading as well, and, Your Honor, I just want to, I know I'm out of time, but you asked for citations to the record, Judge Siler, about how the government was unable or unwilling to control, and most of that's going to be found at pages 480, 487, 498 to 502, because what it shows is that although numerous neighbors filed complaints against the mother, the government took no action to prevent the abuse. Okay. Thank you, Your Honor. That's the Peruvian government failed to act with knowledge of what the mother was doing. Exactly. All right. Thank you very much, Mr. Jobs. Thank you. Pleasure to see you again.
judges: Farris, Bea, Siler